**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ADAM PEGUES, # R-50721,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-239-JPG** |
| | ) | |
| **JOHN COE, DR. PHIL MARTIN,** | ) | |
| **WARDEN STEPHEN DUNCAN,** | ) | |
| **BRAD YONKA, V. WILLIAMS,** | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **LT. BAYLOR, LT. VAUGHN,** | ) | |
| **C/O SIMMONS, L. ADAMSON,** | ) | |
| **J. HARMAN, LT. BROWN,** | ) | |
| **LT. GINDER, C/O PATTERSON,** | ) | |
| **NURSE KIMMEL, ALLAN P. DALLAS,** | ) | |
| **LORI CUNNINGHAM,** | ) | |
| **and ELDON L. COOPER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants were deliberately indifferent to a serious medical condition, and refused to provide him with accommodations for his disability, in violation of the Americans with Disabilities Act ("ADA"). This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A . The Court shall also address a proposed amended complaint submitted by Plaintiff.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the

complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Motion to Amend Complaint (Doc. 9)

After submitting the original complaint (Doc. 1) on February 24, 2016, Plaintiff later sent in another complaint form marked "Amend," received by the Clerk on April 18, 2016. This

second pleading has not been filed of record pending review by the Court, but a docket entry was made construing it as a motion to amend the complaint (Doc. 9). The proposed amended complaint begins by describing an incident that occurred on February 24, 2016, when Plaintiff was not allowed out of his cell to use his call pass to the health care unit. It then recounts incidents beginning on March 30, 2016, when Defendant Coe informed Plaintiff he would not be assigned an attendant to help push his wheelchair.[1] After that, Defendant Coe took away the wheelchair, and directed guards to take Plaintiff to segregation when he would not get out of the chair. Plaintiff claims that these guards used excessive force against him after taking him to another area of the prison.

All of the events described in the proposed amended complaint occurred after the original case was brought. The amendment does not include any of the factual allegations that are contained in the original complaint. Instead, it represents an attempt to add new material to the original case in a piecemeal fashion. This is not permitted. A proper amended complaint must contain all the allegations to support a plaintiff's claims, in a single document – both the claims brought in the original case (with any modifications), as well as any new material. *See* FED. R. CIV. P. 8(a). Further, an amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). If Plaintiff's proposed amended pleading were to be filed, the original complaint would be a nullity. The Court suspects that this was not Plaintiff's intent.

In addition, Plaintiff notes in the proposed amended pleading that his grievances filed over the more recent incidents had not yet been answered at the time he submitted the amendment. Including these new claims in the present suit is thus premature, because the

---

[1] These allegations regarding the lack of accommodation for Plaintiff's disability, which occurred after this action was filed, may be relevant to Count 5 below. That claim encompasses Plaintiff's claims for injunctive relief under the ADA and Rehabilitation Act.

administrative grievance process must be exhausted before a lawsuit can be brought over the new incidents.  *See* 42 U.S.C. § 1997e(a).

For these reasons, the implied motion to amend (Doc. 9) is **DENIED**, without prejudice. The proposed amended pleading shall not be filed.  Plaintiff is free to resubmit a proper amended complaint within the parameters of Federal Rule of Civil Procedure 15 and Southern District of Illinois Local Rule 15.1.  The Court shall proceed to review the merits of the original complaint only.

## The Complaint (Doc. 1)

Plaintiff alleges that when he arrived at Lawrence in March 2014, he was suffering from severe pain in his stomach, chest, spine, and genital area (Doc. 1, p. 8).  He had blood in his stool.  On March 22, 2014, Plaintiff had a personal encounter with Defendant Warden Duncan, and asked him for help to get medical attention for his symptoms.  Defendant Duncan ignored Plaintiff's request.

In April 2014, Plaintiff was finally called to the health care unit and was seen by Defendant Dr. Coe.  Plaintiff's condition had worsened to include numbness in his legs in connection with the spine problem.  Defendant Coe gave Plaintiff four days' worth of stomach medication, which did not help his pain.  Defendant Coe never gave Plaintiff any follow-up treatment.

Plaintiff complains generally that many correctional officers "disrespected and humiliated" him when he asked them for help to get medical treatment.

In October 2015, Plaintiff suffered a severe fall down some stairs, because he could not hold himself up and his legs gave out.  Defendant Coe, despite knowing of Plaintiff's medical condition, told the correctional officer that Plaintiff was able to walk (Doc. 1, p. 9).  Defendant

Nurse Kimmel witnessed the extreme pain that Plaintiff was in, yet said nothing was wrong with him.  Defendant Yonka issued a disciplinary report stating that Plaintiff "refused housing," and Plaintiff was sent back to segregation for 15 days.  He accuses Defendant Cunningham (nursing director) of ignoring his health problems and making a false statement that resulted in his "false imprisonment" for 15 days (the Court presumes that Plaintiff is referring to the same 15-day period in segregation) (Doc. 1, p. 10).  During that time in segregation, Plaintiff had not been given a wheelchair and was forced to crawl on the floor to get around the cell (Doc. 1, p. 10).

In November 2015, Defendant Coe issued Plaintiff a medical permit for a low bunk, and another permit to assign Plaintiff a wheelchair (Doc. 1, p. 9).  Plaintiff obtained the wheelchair on November 5, 2015, and he was released from segregation on an unspecified date.

Plaintiff asserts that Defendants Martin (medical director) and Duncan were deliberately indifferent to his health, because they were responsible for the dysfunctional, chaotic, and unorganized health care system, which failed to address Plaintiff's medical needs.

Defendant Wexford Health Sources ("Wexford") allegedly has a policy to provide only bare minimum treatment to inmates, failing to provide timely follow-up care, and delaying referrals to outside specialists.   These policies resulted in Plaintiff suffering prolonged unnecessary pain due to the delay in receiving medical treatment.

Plaintiff's condition has deteriorated so that he is now confined to a wheelchair, his spinal pain has increased, he is urinating blood every morning, and has blood in his stool.  Although he was given a wheelchair in November 2015, he has never been assigned an attendant to help push the chair despite many requests.   He has not been provided with other accommodations including access to the gym, physical therapy, or showers.  At times, he has had to wash himself in his cell sink after having lost control of his bowels due to his condition (Doc.

1, p. 11).

Finally, he claims that he has made numerous requests for mental health care related to his physical conditions, but unnamed officials have been deliberately indifferent to his needs (Doc. 1, p. 12).  In addition to seeking damages for unconstitutional deliberate indifference to his medical needs, Plaintiff brings state law claims for intentional infliction of emotional distress, battery, and gross negligence (Doc. 1, p. 10).  He also requests injunctive relief (Doc. 1, p. 13).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into the following counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.  Any other claim that is mentioned in the complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:**  Eighth Amendment deliberate indifference claim against Defendant Duncan, for ignoring Plaintiff's request for help in obtaining medical care;

**Count 2:**  Eighth Amendment deliberate indifference claim against Defendants Coe, Martin, Kimmel, and Cunningham, for denying or delaying medical care to Plaintiff;

**Count 3:**  Eighth Amendment deliberate indifference claim against Wexford Health Sources, for maintaining policies that resulted in the denial and/or delay of medical care to Plaintiff;

**Count 4:**  Fourteenth Amendment Claim against Defendants Yonka and Cunningham for subjecting Plaintiff to disciplinary action resulting in his confinement in segregation;

**Count 5:**  Claims under the ADA and Rehabilitation Act, for denial of accommodations such as a wheelchair attendant, showers, and access to gym and physical therapy;

**Count 6:**  Eighth Amendment deliberate indifference claims for officials' failure

to respond to Plaintiff's requests for mental health services;

**Count 7:**  State law claims for intentional infliction of emotional distress, battery, and gross negligence.

Some of the claims in Counts 1, 2, 3, and 5 shall proceed for further review.  Counts 4, 6, and 7 shall be dismissed.

## Count 1 – Deliberate Indifference – Defendant Duncan

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition.  "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk.  Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain."  *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted).  *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015).

A medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).  An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain.  *Id.*

Here, Plaintiff claims that in March 2014, he personally informed Defendant Duncan of his severe pain, and asked for help to get treatment.  Defendant Duncan, as the warden, is presumably not a medical professional.  However, a non-medical prison official may be found to be deliberately indifferent to a prisoner's need for medical attention if he is made aware of a

serious condition yet takes no steps to mitigate the risk of harm to the inmate.  This is what Plaintiff alleges with regard to this encounter with Defendant Duncan.  At this early stage, therefore, Plaintiff's claim against Defendant Duncan arising from Plaintiff's March 2014 request for medical attention shall proceed for further review in **Count 1**.

Plaintiff also seeks to hold Defendant Duncan responsible for other officials' failure to properly treat his medical needs, because of the dysfunctional and unorganized system of health care at the prison.  These allegations, however, fail to state a claim upon which relief may be granted.  In essence, Plaintiff asserts that Defendant Duncan should be liable to him because he is the supervisor of those who are responsible for medical care.  This is not the law – the doctrine of *respondeat superior* (supervisory liability) is not applicable to § 1983 actions.  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).  An official must have been personally responsible for the deprivation of a constitutional right before liability may be imposed.  Accordingly, this portion of Plaintiff's claim against Defendant Duncan is dismissed with prejudice and shall not be considered as part of Count 1.

**Count 2 – Deliberate Indifference – Defendants Coe, Martin, Kimmel, and Cunningham**

These Defendants are all medical professionals at Lawrence.  As described in Count 1, Plaintiff's deliberate indifference claim against these individuals has both an objective and a subjective component.

Plaintiff's symptoms – ongoing severe pain in his stomach, chest, spine, numbness in his legs, blood in his urine and stool, and inability to walk normally – indicated that he was suffering from one or more ailments that warranted medical attention.  The complaint thus satisfies the objective component of an Eighth Amendment claim.  The remaining question is whether Plaintiff's prison medical providers acted or failed to act with deliberate indifference to a known

risk of serious harm.

The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

A delay in providing medical treatment "may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (discussing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Gayton v. McCoy*, 593 F.3d 610, 619 (7th Cir. 2010); *Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007) ("a plaintiff's receipt of *some* medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition")). The Seventh Circuit has also found that an Eighth Amendment claim may be stated where a prison doctor persists in a course of treatment known to be ineffective, fails to order further testing or refuses to refer the inmate to a specialist. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (doctor continued ineffective treatment, and refused to order endoscopy or specialist referral over a two-year period during which plaintiff suffered from ulcer)

In Plaintiff's case, he received some treatment (stomach medication) from Defendant Coe in April 2014. He describes no other treatment from Defendant Coe until October 2015, after he suffered a fall down some stairs. In the interim, Plaintiff indicates that he attempted to get follow-up treatment from Defendant Coe without success, and during this time, his condition got

worse.   After Plaintiff fell in October 2015, Defendant Coe initially did nothing to help Plaintiff's severe pain and inability to walk, and Plaintiff had to crawl on the floor to get around for 15 days.   Ultimately, Defendant Coe issued Plaintiff a low bunk permit and wheelchair permit, but Plaintiff claims his suffering was prolonged in the meantime.   These allegations are sufficient to merit further review of the deliberate indifference claim against Defendant Coe.

Defendant Nurse Kimmel is mentioned only in connection with Plaintiff's attempt to get treatment after the October 2015 fall.   He claims that she was aware of the extreme pain he was suffering at the time, but maintained nothing was wrong with him and "decided to keep her mouth closed for fear of losing her job" (Doc. 1, p. 10).   Defendant Kimmel's failure to provide any treatment to Plaintiff for his pain could amount to deliberate indifference to a serious medical need.   Further factual development will be necessary to evaluate this claim, thus Plaintiff may also proceed against Defendant Kimmel in Count 2.

Plaintiff's allegations against Defendant Cunningham (Director of Nursing) are less specific.   He states only that she "deliberately ignored [his] health problems which resulted in deliberate indifference" (Doc. 1, p. 10).   She also made a "false statement" that caused him to serve 15 days in segregation (this matter shall be addressed under Count 4).   From Plaintiff's conclusory allegation of deliberate indifference, it is impossible to discern what conduct Defendant Cunningham engaged in, or even whether Plaintiff ever had direct contact with her in his attempts to obtain medical treatment.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint must contain sufficient factual content to support the claim). The complaint, as pled, is inadequate to support a deliberate indifference claim against Defendant Cunningham.   She shall thus be dismissed without prejudice from Count 2.

Finally, Plaintiff's claim against Defendant Martin (Health Care Administrator) is similarly problematic.  He states that Defendant Martin did not take his situation seriously, and "was deliberately indifferent to his medical need by knowing and intentionally denying him adequate medical attention" (Doc. 1, p. 9).  These allegations do not provide any factual content to support a claim of deliberate indifference to medical needs.   Plaintiff also states that Defendant Martin was responsible for the inadequate medical attention because of the chaotic and unorganized prison health care system.   As discussed above in Count 1, there is no supervisory liability in a civil rights case, thus Defendant Martin cannot be held liable merely because he was the administrator of an allegedly flawed department.  The only specific example given by Plaintiff is that Defendant Martin ignored his request for an ADA attendant; this claim shall be addressed under Count 5.  The complaint fails to state a deliberate indifference claim against Defendant Martin upon which relief may be granted.  He shall thus be dismissed without prejudice from Count 2.

To summarize, the deliberate indifference claim in **Count 2** shall proceed only against Defendants Coe and Kimmel.

## Count 3 – Deliberate Indifference – Defendant Wexford

Defendant Wexford Health Care Services is a corporation that employs Defendants Coe, Kimmel, Cunningham, and Martin and provides medical care at the prison, but it cannot be held liable solely on that basis.  A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right.  *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).  *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).  Plaintiff's allegations indicate that Defendant Wexford's

official policy to deny follow-up care and to deny or delay referrals to outside specialists led to Defendant Coe's delay in treating his medical problems.   Therefore, Plaintiff's claim against Defendant Wexford in **Count 3** is not subject to dismissal at this stage.

**Dismissal of Count 4 – Disciplinary Action/Deprivation of Liberty without Due Process**

Plaintiff claims that in October 2015, after he fell down the stairs, Defendant Yonka charged him with a disciplinary offense claiming that Plaintiff refused housing.   Defendant Cunningham allegedly made a false statement about the incident.   As a result, Plaintiff was confined in segregation for 15 days, during which he did not have a wheelchair and was unable to walk (Doc. 1, pp. 9-10; Doc. 1-4, pp. 31-32).

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed).   The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan*, 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

In the instant complaint, Plaintiff suggests that he was falsely accused of refusing housing by Defendants Yonka and Cunningham.   However, Plaintiff does not state whether he was given a hearing on the charge that afforded him the procedural protections described in *Wolff*.   If Plaintiff was given a proper hearing, yet was found guilty of the false charge, he would not have

a constitutional claim so long as the decision of the disciplinary hearing board was supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007). On the other hand, if Plaintiff was not afforded the procedural protections in *Wolff*, the circumstances do not indicate that he has an actionable claim.

An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner*, 128 F.3d at 1175.

The Seventh Circuit has elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions.

*See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

In Plaintiff's case, he was confined in segregation for only 15 days as a result of the disciplinary charge brought by Defendant Yonka. This short duration is too minimal to support a constitutional claim in light of the above authorities. **Count 4** against Defendants Yonka and Cunningham shall thus be dismissed with prejudice.

**Count 5 – Americans with Disabilities Act/Rehabilitation Act**

Plaintiff alleges that Defendants Coe and Martin violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, by failing to accommodate his need for an attendant, as well as access to a shower, gym, and physical therapy. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Seventh Circuit has cautioned that claims of discrimination on account of a disability, especially those from *pro se* prisoner litigants, must be analyzed in light of both the ADA and the Rehabilitation Act, whether or not the plaintiff has asserted a claim under the latter statute. *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012); *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667 (7th Cir. 2012).

In order to state a claim for discrimination under both the ADA and the Rehabilitation Act ("RA"), a plaintiff must allege: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The Rehabilitation Act further requires that a plaintiff show that the program in which he was involved received federal

financial assistance; this is true for all state prisons.

Plaintiff's claim that he is unable to walk due to his medical condition, and requires a wheelchair for his mobility, indicates that he may suffer from a disability within the meaning of the ADA and RA.  The refusal to provide him with accommodations arguably has excluded him from participation in physical activity, and the ability to meet his personal hygiene needs, which should be provided to all inmates.  At this stage, his allegations support a potential claim for injunctive relief under the ADA and/or the RA.  However, only the state agency (or official acting in his/her official capacity) may be sued under the ADA and the RA.  "[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA. *See* 29 U.S.C. § 794(b); 42 U.S.C. § 12131."  *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012).   Accordingly, the Clerk shall be directed to add the Director of the Illinois Department of Corrections (official capacity only) as a Defendant herein, and **Count 5** shall proceed against the Defendant IDOC Director.

**Dismissal of Count 6 – Deliberate Indifference to Mental Health Needs**

Plaintiff claims generally that his physical health problems have led him to have thoughts and flashes of anger, which have added to the deterioration of his health.  He has submitted request slips to be given mental health screening, but has not received any services.

The Seventh Circuit has found that "the need for a mental illness to be treated could certainly be considered a serious medical need."  *Id.* at 734; *Wellman v. Faulkner*, 715 F.2d 269 (7th Cir. 1983).  In Plaintiff's case, it is not clear whether he is suffering from a mental illness that might constitute a serious medical condition.  Further, he has not identified any prison official who has received or failed to respond to his requests for mental health services.  The current complaint does not contain sufficient information to meet either the objective or

subjective component of a deliberate indifference claim, with respect to Plaintiff's allegation that he suffers from a serious mental health condition.   Accordingly, **Count 6** shall be dismissed without prejudice at this time.

**Dismissal of Count 7 – State Law Claims**

Plaintiff seeks to assert claims for intentional infliction of emotional distress, battery, and gross negligence against "all defendants," based on the same allegations that underlie his deliberate indifference claims (Doc. 1, p. 10).  Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims.  *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).  "A loose factual connection is generally sufficient."  *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).  Because some claims and Defendants shall be dismissed from the action, the Court shall consider these state law claims only in connection with the Defendants who shall remain in this action.

Under Illinois law, the tort of intentional infliction of emotional distress covers only acts that are truly "outrageous," that is, an "'unwarranted intrusion . . . calculated to cause severe emotional distress to a person of ordinary sensibilities.'"  *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961) (quoting *Slocum v. Food Fair Stores of Fla.*, 100 So. 2d 396 (Fla.1958)).  *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).  The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe

emotional distress.  *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).  To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community."  *Honaker*, 256 F.3d at 490 (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp.*, *Inc.*, 610 N.E.2d 745, 749 (Ill. App. 1993).  Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case.  *Honaker*, 256 F.3d at 490.

The allegations that Defendants Coe, Kimmel, and Duncan failed to respond, and/or delayed treatment for Plaintiff's medical complaints (see Counts 1 and 2) do not rise to the level of "extreme and outrageous" conduct that would support a claim for intentional infliction of emotional distress.  This state law claim shall thus be dismissed from the action without prejudice.

Next, Plaintiff's battery claim is entirely unsupported by any factual allegations against a particular Defendant, which would suggest that a battery occurred.  Under Illinois state law, "[a] battery occurs when one 'intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual.'"  *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (quoting 720 ILL. COMP. STAT. 5/12–3(a)).  This claim shall also be dismissed without prejudice.

Finally, Plaintiff does not articulate which actions or inactions form the basis for his claim of "gross negligence." If he means to assert a claim against Defendants Coe and/or Kimmel for medical negligence in connection with their alleged failure to provide him with adequate medical treatment, then he must comply with the Illinois state law requirements for bringing a medical malpractice/negligence claim.

Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records).  *See* 735 ILL. COMP. STAT. §5/2-622(a) (West 2013).[2] A separate affidavit and report shall be filed as to each defendant.  *See* 735 ILL. COMP. STAT. §5/2-622(b).

Failure to file the required certificate is grounds for dismissal of the claim.  *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000).  However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court.  *Sherrod*, 223 F.3d at 614.  "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least

---

[2]  The August 25, 2005, amendments to a prior version of this statute were held to be unconstitutional in 2010.  *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010) (Holding P.A. 94-677 to be unconstitutional in its entirety).  After *Lebron*, the previous version of the statute continued in effect.  *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n.1 (C.D. Ill. 2010).  The Illinois legislature re-enacted and amended 735 Ill. Comp. Stat. §5/2-622 effective January 18, 2013 (P.A. 97-1145), to remove any question as to the validity of this section.  *See* notes on Validity of 735 Ill. Comp. Stat. §5/2-622 (West 2013).

afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, Case No. 06-cv-651-MJR, 2007 WL 1655799, at *4-5 (S.D. Ill. June 5, 2007).

In the instant case, Plaintiff has failed to file the necessary affidavits or reports. Therefore, the "gross negligence" claim against Defendants Coe and Kimmel shall also be dismissed. However, the dismissal shall be without prejudice at this time, and Plaintiff shall be allowed 35 days to file the required affidavits/certificates of merit, if he desires to seek reinstatement of this claim. Should Plaintiff fail to timely file the required affidavits/certificates, the dismissal of the medical negligence claims in **Count 7** shall become a dismissal **with prejudice.** *See* FED. R. CIV. P. 41(b).

Finally, because Defendant Duncan is not a medical provider, a claim against him for negligence must allege facts to establish that the Defendant Duncan owed Plaintiff a duty of care, breached that duty, and that the breach was the proximate cause of Plaintiff's injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011) (citing *Iseberg v. Gross*, 879 N.E.2d 278 (2007)). The complaint does not articulate these elements with regard to Plaintiff's encounter with Defendant Duncan in March 2014. This portion of the claim shall thus be dismissed without prejudice.

**Dismissal of Additional Defendants**

Plaintiff includes a number of other prison officials among the listed Defendants, but then fails to mention them again in the body of the complaint. No allegations of misconduct are included against Defendants Williams, Baylor, Vaughn, Simmons, Adamson, Harman, Brown, Ginder, Patterson, Dallas, or Cooper.

Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer

the complaint.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2).  Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him.  Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).  Accordingly, Defendants Williams, Baylor, Vaughn, Simmons, Adamson, Harman, Brown, Ginder, Patterson, Dallas, and Cooper will be dismissed from this action without prejudice.

## Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

## Disposition

The Clerk is **DIRECTED** to add the **DIRECTOR of the ILLINOIS DEPARTMENT of CORRECTIONS** (official capacity) as a Defendant in this action.

**COUNT 4** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.  **COUNTS 6 and 7** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

Defendants **MARTIN, WILLIAMS, BAYLOR, VAUGHN, SIMMONS, ADAMSON, HARMAN, BROWN, GINDER, PATTERSON, DALLAS, CUNNINGHAM,** and **COOPER** are **DISMISSED** from this action without prejudice.  Defendant **YONKA** is **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that if Plaintiff wishes to move the Court to reinstate the medical negligence claims in **COUNT 7** against Defendants **COE** and **KIMMEL**, Plaintiff shall

file the required affidavits pursuant to 735 ILL. COMP. STAT. §5/2-622, within 35 days of the date of this order (**on or before July 6, 2016**).  Further, Plaintiff shall timely file the required written report(s)/certificate(s) of merit from a qualified health professional, in compliance with §5/2-622.  Should Plaintiff fail to timely file the required affidavits or reports, the dismissal of the medical negligence claims in **COUNT 7** shall become a dismissal **with prejudice**.

The Clerk of Court shall prepare for Defendants **COE, DUNCAN, KIMMEL, WEXFORD HEALTH SOURCES, INC.,** and **DIRECTOR, ILLINOIS DEPARTMENT of CORRECTIONS**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.

Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 31, 2016**

<u>s/J. Phil Gilbert</u>
United States District Judge